Matthias, J.
The question presented by this appeal is whether an action for restitution based on the ground of unjust *256 enrichment lies to recover the increase in rates charged by a public utility under an order of the Public Utilities Commission, where such order is subsequently reversed by the Supreme Court on the ground that it is unreasonable and unlawful.
Restitution, on the basis of unjust enrichment, is a common-law remedy designed to prevent one from retaining property to which he is not justly entitled.
Although the remedy of restitution is recognized in Ohio, the problem before us is whether that remedy is available in the present case, or whether such remedy, in relation to the present situation, has been abrogated either directly or indirectly by statute.
To determine this, we must first examine the statutes relating to public utilities.
There is perhaps no field of business subject to greater statutory and governmental control than that of the public utility. This is particularly true of the rates of a public utility. Such rates are set and regulated by a general statutory plan in which the Public Utilities Commission is vested with the authority to determine rates in the first instance, and in which the authority to review such rates is vested exclusively in the Supreme Court by Section 4903.12, Revised Code, which reads as follows:
“No court other than the Supreme Court shall have power to review, suspend, or delay any order made by the Public Utilities Commission, or enjoin, restrain, or interfere with the commission or any public utilities commissioner in the performance of official duties. A writ of mandamus shall not be issued against the commission or any commissioner by any court other than the Supreme Court.”
Thus at the outset it is apparent that, if such action is held to lie, the effect will be to vest in a court other than the Supreme Court the authority to review the rates of a public utility, contrary to statutes.
Turning our attention, however, to the specific statute relating to orders of the commission concerning rates, we find Section 4903.16, Revised Code, which reads as follows:
“A proceeding to reverse, vacate, or modify a final order rendered by the Public Utilities Commission does not stay execution of such order unless the Supreme Court or a judge there *257 of in vacation, on application and three days ’ notice to the commission, allows such stay, in which event the appellant shall execute an undertaking, payable to the state in such a sum as the Supreme Court prescribes, with surety to the satisfaction of the Clerk of the Supreme Court, conditioned for the prompt payment by the appellant of all damages caused by the delay in the enforcement of the order complained of, and for the repayment of all moneys paid by any person, firm, or corporation for transportation, transmission, produce, commodity, or service in excess of the charges fixed by the order complained of, in the event such order is sustained. ’ ’
From this section it is clear that the General Assembly intended that a public utility shall collect the rates set by the commission’s order, giving, however, to any person who feels aggrieved by such order a right to secure a stay of the collection of the new rates after posting a bond.
Next we find Section 4905.32, Revised Code, which reads as follows :
“No public utility shall charge, demand, exact, receive, or collect a different rate, rental, toll, or charge for any service rendered, or to be rendered, than that applicable to such service as specified in its schedule filed with the Public Utilities Commission which is in effect at the time.
“No public utility shall refund or remit directly or indirectly, any rate, rental, toll, or charge so specified, or any part thereof, or extend to any person, firm, or corporation, any rule, regulation, privilege, or facility except such as are specified in such schedule and regularly and uniformly extended to all persons, firms, and corporations under like circumstances for like, or substantially similar, service.”
Under this section a utility has no option but to collect the rates set by the commission and is clearly forbidden to refund any part of the rates so collected.
A consideration of the above statutes clearly shows that it was the intention of the General Assembly to provide that utility rates are solely a matter for consideration by the Public Utilities Commission and the Supreme Court. The utility must collect the rates set by the commission, unless some one by affirmative act secures a stay of such order.
*258 The question also arises as to the status of the rates set by the commission, during the pendency of the appeal. The only basis upon which plaintiff could recover would be that such rates were excessive when collected. We have previously determined that under the statutes of Ohio the utility has no choice but to collect the rates set by the order of the commisr sion, in the absence of a stay of execution pursuant to Section 4903.16, Revised Code. We have determined further that the General Assembly provided that there is wo automatic stay of any order, but that it is necessary for any person aggrieved thereby to take affirmative action, and if he does so he is required to post bond.
In the present case we have rates which were established by the proper designated authority after a hearing and consideration in full compliance with the law, and, until such time as they were set aside by the Supreme Court, they were, in the absence of a stay, the lawful rates and the only ones which could be collected by the utility.
A similar situation was considered by the Supreme Court of Illinois in the case of Mandel Brothers, Inc., v. Chicago Tunnel Terminal Co., 2 Ill. (2d), 205, 117 N. E. (2d), 774, in which it was said:
“The fundamental issue in this case is whether a rate which has been approved by the Commerce Commission after a hearing as to its reasonableness can be termed an ‘excessive’ rate for the purpose of awarding reparations. We hold that it cannot, even though the rate approved by the commission has subsequently been set aside upon judicial review.”
And as to the recovery of the excess in such rates it is said in 9 American Jurisprudence, 542, Section 175:
“Where the charges collected by the carrier were based upon rates which had theretofore been established or approved by the public authority, the fact that such rates are subsequently reduced affords no right of action for damages or for the recovery of the difference between the old and new rates upon the ground that the prior rate was unreasonable, unless such right is conferred by the governing statute, as is held to be the case in some jurisdictions. ”
*259 Prom the above consideration it is onr conclusion that the rates of a public utility in Ohio are subject to a general statutory plan of regulation and collection; that any rates set by the Public Utilities Commission are the lawful rates until such time as they are set aside as being unreasonable and unlawful by the Supreme Court; and that the General Assembly, by providing a method whereby such rates may be suspended until final determination as to their reasonableness or lawfulness by the Supreme Court, has completely abrogated the common-law remedy of restitution in such cases.
Common sense and reason lead us to a wholehearted endorsement of the conclusion, as is so well stated as follows in the opinion of Judge Hoy of the Hamilton County Court of Common Pleas:
“It may seem inequitable to permit the defendant to retain the difference in the rates collected under the May 28, 1953, order of the commission and the rates finally fixed by the commission on June 4, 1954, but absolute equity in a particular case must sometimes give way to the greater overall good. In adopting a comprehensive scheme of public utility rate regulation, the Legislature has found it impossible to do absolute justice under all circumstances. For example, under present statutes a utility may not charge increased rates during proceedings before the commission seeking same and losses sustained thereby may not be recouped. Likewise, a consumer is not entitled to a refund of excessive rates paid during proceedings before the commission seeking a reduction in rates. Thus, while keeping its broad objectives in mind, the Legislature has attempted to keep the equities between the utility and the consumer in balance but has not found it possible to do absolute equity in every conceivable situation.
“In any event, a consideration of the applicable statutes and the authorities cited by counsel leads me to conclude that a .rate fixing order of the Public Utilities Commission of Ohio stands on a different footing than the judgment or order-of a. court of law and that the common-law right of restitution is not available to the plaintiffs under the circumstances of this case.”
*260 Having determined that no cause of action exists in this case, it is unnecessary for the court to consider the question raised in relation to class actions.
Under the above determination, the Court of Common Pleas did not err in sustaining the demurrer to the second amended petition and in striking the third amended petition from the files. The judgment of the Court of Appeals is, therefore, reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Bell, Taft and HERBERT, JJ., concur.